THE STATE OF MISSOURI, Defendant in Error, *v*. HENRY REAKEY, Plaintiff in Error.

### January 26, 1876.

1. An indictment for murder, which states that the *assault*, but not that the wounding which caused death, was willful, deliberate, and premeditated, *held* to be insufficient to support a conviction.

2. The manner in which the murder was committed must appear with certainty in the indictment.

3. The indictment must lay the time of death within a year and a day from the wounding.

4. An indictment that concludes, "against the peace and dignity of the state, and against the form of the statute," etc., is not bad as not concluding "against the peace and dignity of the state."

5. The word "immediately" will not supply the place of "then and there" in an indictment.

ERROR to Lincoln Circuit Court.

*Reversed and remanded.*

*Wm. A. Alexander*, for plaintiff in error, cited: Wag. Stat. 445, sec. 1; State *v*. Jones, 20 Mo. 58; Old Const., sec. 26; Art. 6, New Const., sec. 38; State *v*. Loper, 19 Mo. 254; State *v*. Manafield, 41 Mo. 470.

*Josiah Creech*, Circuit Attorney, for defendant in error.

BAKEWELL, J., delivered the opinion of the court.

Henry Reakey was indicted at the fall term of the Circuit Court of Lincoln county, in October, 1875, for the murder of his wife. He was tried and convicted of murder in the

first degree. Motions in arrest and for a new trial were made and overruled, and, exceptions being properly taken, the case is brought here by writ of error.

The counsel for appellant contend that the motion in arrest should have been sustained by reason of the insufficiency of the indictment.

The indictment is as follows:

"State of Missouri, county of Lincoln. The grand jurors of the State of Missouri, summoned from the body of Lincoln county, impaneled, charged, and sworn, upon their oaths present that Henry Reakey, late of the county aforesaid, on or about the 9th day of September, A. D. 1875, at the county of Lincoln, State aforesaid, did feloniously, willfully, deliberately, premeditatedly, on purpose, and of his malice aforethought, make an assault on and upon the body of one Eliza Reakey, and that the said Henry Reakey, at the time and place as aforesaid, with a stick or cudgel of some kind unknown to these jurors, and with his opened right hand, the same being deadly weapons, the which the said Henry Reakey then and there held in his hand or hands, to, at, and against the said Eliza Reakey, he, the said Henry Reakey, then and there feloniously, on purpose, and of his malice aforethought, with said stick or cudgel of some kind unknown to these jurors, as aforesaid, did strike, penetrate, bruise, and wound the said Eliza Reakey, in and upon the right side of the forehead, immediately over the right eye, fracturing the skull of the said Eliza Reakey with said stick or cudgel as aforesaid, and in and upon the throat, with his open right hand, seized, choked, suffocated, and strangled her, the said Eliza Reakey, thereby giving her, the said Eliza Reakey, then and there, with the said stick or cudgel of some kind unknown to these jurors as aforesaid, and with his open right hand as aforesaid, by means of striking, penetrating, bruising, choking, suffocating, strangling, and wounding the said Eliza Reakey as aforesaid, two mortal wounds in and upon the right side of the forehead, imme-

diately over the right eye, and in and upon the throat of her, the said Eliza Reakey, of which said mortal wounds, from the said stick or cudgel, and from the said choking and strangling her with the said right hand as aforesaid, the said Eliza Reakey immediately died.

"And so the jurors aforesaid, upon their oaths aforesaid, do say that the said Henry Reakey, in the manner and by the means aforesaid, feloniously, willfully, deliberately, premeditatedly, of his malice aforethought, did kill and murder the said Eliza Reakey, as above stated, against the peace and dignity of the State, and contrary to the form of the statute in such cases made and provided by the State."

Is this indictment, under our statute, sufficient to support a conviction for murder in the first degree?

1. It sets forth that the assault was willful, deliberate, and premeditated, but it does not state that the wounding, bruising, and penetrating by which death is alleged to have been effected were willful, or deliberate, or premeditated. This we regard as fatal to the indictment.

2. But the indictment is also insufficient in that it is inaccurate and insensible. The words used in describing the offense are nonsense. The right hand is declared to be a deadly weapon; and if the indictment be not repugnant, it is at least uncertain, both in its description of the wound and of the part of the body upon which it was inflicted. It is impossible to say with certainty, from the wording of this indictment, whether it is intended to charge that defendant inflicted two mortal wounds upon the throat and two upon the forehead of the deceased, or two on the forehead and none on the throat, or one mortal wound on the throat and one on the forehead. The part of the body where the violence was inflicted must be set forth with certainty. *State* v. *Jones*, 20 Mo. 58. The manner in which the murder was committed does not, in this indictment, appear with sufficient accuracy.

3. The indictment does not sufficiently charge the time

of death. In case of murder, the time of the death must be laid within a year and a day after the mortal stroke was given. The date of the death, as well as that of the mortal stroke, must, therefore, distinctly appear. In *Lester* v. *The State*, 9 Mo. 658, the indictment alleged that "the said Scott did *instantly* die," and this was held insufficient.

The indictment in the present instance charges that "said Eliza Reakey *immediately* died." In capital cases great strictness in material averments is required, and, as is said by the learned judge delivering the opinion of the court in the case just cited, if established precedents are lost sight of, it is impossible to see where innovation will stop. If the word *instantly* is held not to supply the place of "then and there" in an indictment, the word *immediately* cannot be said to do so.

It was further objected to the indictment that it does not conclude "against the peace and dignity of the state." The law requires that all indictments shall so conclude; but we are of opinion that this indictment complies with the law in this respect. Some words which are quite useless are added at the end; they should have been omitted, but the conclusion of the indictment is "against the peace and dignity of the State," for all that.

By the ancient law, in all peculiar jurisdictions, offenses were said to be done against his peace in whose court they were tried; in a county palatine, *contra pacem domini:* in a sheriff's court, *contra pacem vice-comitis;* in the court of a corporation, *contra pacem bailivorum;* and, as in the Court of King's Bench, the supreme court of common law in the Kingdom of England, they are said to be done *contra pacem Regis*—"against the peace of the *King*"—so, in this republic, they must by law be alleged, in the conclusion of the indictment, of course, to be done "against the peace and dignity of the *State*."

That the words, "and against the form of the statute," etc., have been carelessly added, does not make the indict-

ment bad ; it concludes, " against the peace and dignity of the State."

On the trial of the cause a witness was allowed to testify, against the objection of the counsel for the accused, that he heard a conversation between Reakey and one Michor, in which, speaking of the coffin prepared for his wife's burial, Reakey said that, " if the box was not big enough, he could mash her into it ;" and another witness for the State was also allowed to testify, against the objection of counsel for the prisoner, that, speaking of the death of Reakey's wife, a few days after the occurrence, he told Reakey it was " a bad state of affairs," to which Reakey replied " that it was," and then the witness asked Reakey if he was " going to get another wife," and Reakey said " he was, as soon as he had done sowing wheat." It is urged that this testimony was manifestly incompetent, and had a tendency improperly to prejudice the jury against the accused.

We think this evidence of conversations, occurring, as appears from the testimony, immediately after the death, was admissible, as tending to show want of affection, and as justifying the jury in inferring the same state of mind at the time of the alleged homicide. But it is not necessary to pass upon this, as, for the reasons stated, we think the indictment is bad, and the judgment of the Circuit Court must be reversed and the cause remanded. The other judges concur.